OPINION BY DUBOW, J.:
Appellant, James Duane Baker-Myers, appeals from the August 19, 2016 Judgment of Sentence entered in the Mercer County Court of Common Pleas following his jury conviction of Corruption of Minors, graded as a third-degree felony ("COM-Felony").[1] Appellant claims, inter alia, that the Commonwealth's evidence was insufficient to convict him of COM-Felony because the jury acquitted him of Rape, Sexual Assault, Aggravated Indecent Assault, and Indecent Assault[2] (collectively, "the Sexual Offenses"). We are constrained to agree with Appellant and find that the Commonwealth failed to prove an essential element of COM-Felony. We, thus, vacate Appellant's COM-Felony conviction, and remand for resentencing on the lesser-included offense of COM, graded as a first-degree misdemeanor ("COM-Misdemeanor").[3]
Police charged Appellant with the Sexual Offenses arising from the 17-year-old victim's allegation that, on the evening of July 19, 2015, 20-year-old Appellant sexually assaulted her.
Following a two-day trial, on April 13, 2016, the jury convicted Appellant of COM-Felony. The jury, however, found him not guilty of the Sexual Offenses.[4]
*1095 On August 29, 2016, the court imposed a sentence of one to two years' imprisonment, and a consecutive term of three years' probation. Additionally, Appellant's conviction of COM-Felony classified him as a Tier I sexual offender, and required him to comply with the fifteen-year registration and reporting requirements of the Sexual Offender Registration and Notification Act.[5] Appellant did not file a Post-Sentence Motion.
This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.
Appellant raises the following two issues on appeal:
[1.] Whether the jury's guilty verdict on the charge of [COM-Felony] was not supported by sufficient evidence since a material element of the offense was the commission of a Chapter 31 offense and Appellant was found not guilty of all four of the [Sexual Offenses] charged[?]
[2.] Whether the jury's guilty verdict on the charge of [COM-Felony] was not supported by sufficient evidence since the evidence failed to establish Appellant's acts constituted a "course of conduct[?]"
Appellant's Brief at 5.
Appellant first claims that the evidence was insufficient to support the jury's guilty verdict on the COM-Felony because in order to convict Appellant of COM-Felony, the jury must convict him of at least one Chapter 31 sexual offense with which the Commonwealth charged him. Id. at 14. He concludes that since the jury found Appellant not guilty of the charged Chapter 31 Sexual Offenses, the evidence was insufficient to convict him of COM-Felony. Id. at 11. We agree.
It is well settled that "a claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer , 560 Pa. 308, 744 A.2d 745, 751 (2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Miller , 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted).
Additionally, the burden is on the Commonwealth to prove every element of a crime beyond a reasonable doubt. Commonwealth v. Minerd , 562 Pa. 46, 753 A.2d 225, 231 (2000). It follows generally then, that if a jury finds a defendant not guilty, then the jury has found that the Commonwealth failed to establish the elements of the crime beyond a reasonable doubt.
Turning to the elements of COM-Felony, the jury, in order to convict a defendant of COM-Felony, must find the following:
Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.
18 Pa.C.S. § 6301(a)(1)(ii) (emphasis added). In other words, the jury must find, inter alia, that a defendant acted "in violation of Chapter 31 (relating to sexual offenses)." Id.
*1096 While we have not identified any authority directly on this issue, a review of an analogous case, Commonwealth v. Magliocco , 584 Pa. 244, 883 A.2d 479 (2005), guides our analysis. In Magliocco , a jury convicted the defendant of Ethnic Intimidation, but did not convict him of Terroristic Threats. The Ethnic Intimidation statute requires, inter alia, that the Commonwealth prove that the defendant committed Terroristic Threats and did so "with malicious intention toward the race, color, religion[,] or national origin of another individual or group of individuals[.]" 18 Pa.C.S. § 2710(a). The Supreme Court concluded that since the Commonwealth charged and prosecuted Appellant with the predicate offense of Terroristic Threats, but failed obtain a conviction, the evidence was insufficient to convict the defendant of Ethnic Intimidation. Id. at 493.
Analogously, in the instant case, the Commonwealth charged and prosecuted Appellant for COM-Felony and the Sexual Offenses, but failed to obtain a conviction on any of the Sexual Offenses. By acquitting Appellant of the Chapter 31 Sexual Offenses, the jury found that the Commonwealth had failed to establish beyond a reasonable doubt that Appellant acted "in violation of Chapter 31." Thus, because the jury found that Appellant had not acted "in violation of Chapter 31," an essential element of COM-Felony, the Commonwealth was unable to establish every element of COM-Felony. See Magliocco , supra at 493 (reiterating that to "secure a conviction for any crime, the Commonwealth must prove all necessary elements beyond a reasonable doubt."); see also Miller , 172 A.3d at 640. Accordingly, we vacate Appellant's COM-Felony conviction.[6]
Since we have vacated the COM-Felony conviction, we must address the issue of re-sentencing on remand. This Court in Commonwealth v. Kelly , 102 A.3d 1025 (Pa. Super. 2014) (en banc), made clear that subsection (a)(1)(i) of the COM statute, COM-Misdemeanor, is a lesser-included offense of subsection (a)(1)(ii), COM-Felony. Kelly , 102 A.3d at 1032-33. Thus, we conclude that we must vacate Appellant's COM-Felony conviction,[7] but that his COM-Misdemeanor conviction remains valid as a lesser-included offense. Id. at 1032, citing Commonwealth v. Sims , 591 Pa. 506, 919 A.2d 931, 938 (2007) (it is "the settled law in Pennsylvania ... that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged.").
Judgment of Sentence affirmed in part and vacated in part. Case remanded for resentencing on COM-Misdemeanor. Jurisdiction relinquished.
Judgment Entered.
President Judge Emeritus Bender, Judge Panella, Judge Lazarus, and Judge Ott join the Opinion.
Judge Stabile files a dissenting opinion in which President Judge Gantman, Judge Bowes, and Judge Murray join.
DISSENTING OPINION BY STABILE, J.:
Analogizing this case to Commonwealth v. Magliocco , 584 Pa. 244, 883 A.2d 479 (2005), the Majority holds that Appellant's acquittals for rape, sexual assault, aggravated indecent assault and indecent assault *1097 [1] defeat his conviction for corruption of minors ("COM"), graded as a third degree felony,[2] as a matter of law. Magliocco is not on point, as the COM statute in this case is materially different from the ethnic intimidation statute at issue in Magliocco . In my view, careful analysis of (1) Magliocco , (2) post- Magliocco decisions that restrict its applicability, and (3) our own decision in Commonwealth v. Anderson , 379 Pa.Super. 589, 550 A.2d 807 (1988) (en banc ), demonstrates that Appellant's acquittals for Sexual Offenses do not rule out his COM conviction. Accordingly, I respectfully dissent.
The jury found Appellant, a 20-year-old male, guilty of corrupting the morals of a 17-year-old female ("the victim"). On July 19, 2015, Appellant contacted the victim and asked to speak with her in person. Around 9:00 p.m., the victim went outside her house and met Appellant at the end of her driveway. Appellant said he wanted to take his dirt bike for a ride, and the victim agreed to accompany him. When the victim asked what Appellant wanted to discuss, Appellant replied that he would tell her "in a little bit." They rode to a baseball field a short distance from the victim's home, where Appellant told her to leave her cell phone so "no one could listen into" their conversation. They then drove to the railroad tracks on the west side of town, where they talked for about twenty minutes. Appellant began touching the victim. She responded that she "didn't feel that way about [Appellant]," but Appellant began touching her breasts. When she resisted, he forcibly removed her top, placed her onto the grass, sat on her legs and put his weight down to pin her arms behind her back. The victim said she "did not want to do this." Appellant removed the victim's shorts and underwear and digitally penetrated her vagina without her permission. While Appellant disrobed, the victim attempted to retrieve her clothing and get away, but Appellant stopped her and placed her back onto the grass. The victim continued to protest that she "did not want to do this," asked Appellant to stop and tried to push Appellant off her, but Appellant inserted his penis into the victim's vagina. The victim never consented to sexual intercourse.
The Commonwealth charged Appellant with Sexual Offenses and COM. Notably, the information against Appellant did not allege the crime of rape, sexual assault, aggravated indecent assault, or indecent assault as the basis for the COM count. Instead, the COM count charged Appellant with a course of conduct related to sexual offenses.[3] The jury acquitted Appellant of the Sexual Offenses but found him guilty of COM. The trial court imposed a sentence of imprisonment, and this appeal followed.
The Crimes Code defines COM as follows:[4]
*1098 Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.
18 Pa.C.S.A. § 6301(a)(1)(ii) (emphasis added). "Course of conduct" means "more than one act over a period of time, however short, evidencing a continuity of conduct," as opposed to a single act. Commonwealth v. Kelly , 102 A.3d 1025, 1031 (Pa. Super. 2014) (en banc ).[5]
Relying on Magliocco , the Majority asserts: "By acquitting Appellant of the Chapter 31 Sexual Offenses, the jury found that the Commonwealth had failed to establish beyond a reasonable doubt that Appellant acted 'in violation of Chapter 31.' " Majority Op. at 1096. Magliocco is not controlling, because the ethnic intimidation statute at issue in that case had materially different language than the COM statute's "course of conduct" element. The Majority arrives at its decision by narrowly focusing on Magliocco , disregarding post- Magliocco decisions that quarantine its reach, and overlooking our own cogent analysis of the COM statute in Anderson .
I begin by discussing Magliocco and its treatment in subsequent Supreme Court decisions. In Magliocco , the defendant was convicted of ethnic intimidation ( 18 Pa.C.S.A. § 2710 ) but acquitted of terroristic threats ( 18 Pa.C.S.A. § 2706 ).[6] At that time, the ethnic intimidation statute provided that a person is guilty of ethnic intimidation
if, with malicious intention toward the race ... of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 ... or under section 3503 ... or under section 5504 ... with respect to such individual ... or with respect to one or more members of such a group.
18 Pa.C.S.A. § 2710(a) (emphasis added). The Magliocco Court held that the only potentially applicable predicate offense was terroristic threats. Id. , 883 A.2d at 489.
The Supreme Court reversed the defendant's ethnic intimidation conviction. The Court held that under Section 2710, the acquittal of terroristic threats constituted the jury's determination that the defendant did not "commit" terroristic threats, which was a specific element of ethnic intimidation and the only potentially applicable predicate offense in his case. The Court emphasized that while the Commonwealth was not required to formally charge a defendant with the predicate offense in order to charge him with and secure a conviction for ethnic intimidation based upon that predicate offense, the Commonwealth did in fact charge the defendant with the predicate offense of terroristic threats. In this "admittedly unusual" circumstance, acquittal of this predicate offense rendered the evidence insufficient to *1099 convict the defendant of ethnic intimidation. Id. at 492-93.
Following Magliocco , in Commonwealth v. Reed , 607 Pa. 629, 9 A.3d 1138 (2010), the Supreme Court found that Magliocco provided "limited guidance" in interpreting 18 Pa.C.S.A. § 6318, a statute prohibiting unlawful contact with a minor ("unlawful contact"). Id. at 1147. In Reed , the defendant was convicted of unlawful contact but acquitted of all charged underlying offenses, including attempted rape of a child and attempted involuntary deviate sexual intercourse (first-degree felonies), attempted statutory sexual assault (a second-degree felony), and attempted indecent assault (a first-degree misdemeanor). The Supreme Court granted review to decide what effect the defendant's acquittals on the underlying charges had on the grading of his unlawful contact conviction. At the time of the offense, Section 6318 provided:
(a) Offense defined.-A person commits an offense if he is intentionally in contact with a minor for the purpose of engaging in ...[a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses) ...
(b) Grading.-A violation of subsection (a) is:
(1) an offense of the same grade and degree as the most serious underlying offense in subsection (a) for which the defendant contacted the minor; or
(2) a misdemeanor of the first degree; whichever is greater.[7]
The grading of the unlawful contact conviction depended upon the nature of the underlying offense, i.e. , "the purpose" for which the defendant contacted the minor.
Citing Magliocco , the Court held that the defendant's conviction was properly graded as a first-degree misdemeanor under Section 6318(b)(2) :
It is here that [ Magliocco ] can provide limited guidance. Although that case involved predicate offenses and the instant case does not, both cases share one common feature: to secure a conviction of the offense under review, i.e. , terroristic threats in Magliocco and the Chapter 31 offenses herein, the Commonwealth was not required to charge the defendant with the other crimes. The operative reality, however, is that in the case sub judice , the Commonwealth did charge those offenses, and the jury acquitted Appellee of those crimes. As we noted in [ Magliocco ], acquittals "have been accorded a special weight in the law." ...
Thus, while it was not incumbent upon the Commonwealth to secure a conviction of an enumerated offense in [ Section] 6318(a), it chose to do so, and Appellee's acquittal cannot be ignored when applying the appropriate grading under subsection 6318(b). In this scenario, where Appellee was acquitted of all other charged offenses, the sentencing court had to guess which offense Appellee sought to commit when he contacted [the detective posing as a 12-year-old in a public chat room]. We cannot countenance that result.
Id. at 1147 (emphasis in original).
Subsequent to Reed , the Supreme Court has consistently declined to apply Magliocco to criminal statutes. First, in Commonwealth v. Miller , 613 Pa. 584, 35 A.3d 1206 (2012), the defendant was charged with, inter alia , first-, second-, and third-degree murder and robbery as the predicate offense for second-degree murder.
*1100 The jury found the defendant guilty of second-degree murder but not guilty of robbery.[8] Relying on Magliocco , the defendant argued that the evidence was insufficient to convict him of second-degree murder because of his acquittal for the predicate offense of robbery. The Supreme Court held that Magliocco was inapposite, and that the defendant's second-degree murder conviction was valid, reasoning:
To secure a conviction for ethnic intimidation, the Commonwealth must prove that the defendant "committed" the predicate offense "with malicious intention toward the race" of an individual or group ... From a plain reading of the statutory text, there is no question that the commission of the predicate offense is an element of ethnic intimidation ...
In contrast to the ethnic intimidation statute, the second-degree murder statute does not set forth or require the commission of the predicate offense as an element. To secure a conviction for second-degree murder, the Commonwealth must prove that the defendant committed a murder "while [he or she] was engaged ... in the perpetration of a felony." 18 Pa.C.S.[A.] § 2502(b). "Perpetration of a felony" is statutorily defined in a very broad manner, encompassing, inter alia , "[t]he act of the defendant in engaging in ... the commission of, or an attempt to commit, ... robbery...." 18 Pa.C.S. [A.] § 2502(d). Based on a plain reading of this statutory language, ... to convict an accused of second-degree murder, the Commonwealth is not required to prove that the accused actually committed the predicate offense ...
In other words, in contrast to the crime of ethnic intimidation, second-degree murder does not require, as an element of the crime, the completion of the predicate offense.
Miller , 35 A.3d at 1212, 1213 (emphasis added). Thus,
Magliocco , which was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute, does not control the outcome of the instant case, where a very different statute is at issue ... Magliocco and Reed are distinguished by the plain text of their particular governing statutes, which controlled the disposition of those cases, but are not generally applicable to other offenses.
Id. at 1213. Further, because "consistency in a verdict is not required," the defendant's acquittal of robbery did not necessitate vacatur of his conviction of second-degree murder. Id.
Next, in Commonwealth v. Moore , 628 Pa. 103, 103 A.3d 1240 (2014), following a gunfight in which one individual was killed and several others were injured, the defendant was charged with murder, attempted murder and PIC. The jury acquitted the defendant of murder and attempted murder but convicted him of PIC.
The Superior Court reversed the PIC conviction as "infirm" because "the jury acquitted [the defendant] of committing any crime with the firearm that he possessed." Commonwealth v. Moore , 49 A.3d 896, 898 (Pa. Super. 2012). Relying on Magliocco , we rejected the Commonwealth's argument that the PIC conviction should stand based on Pennsylvania's acceptance of inconsistent verdicts. We interpreted Magliocco as holding that "where the offense in question require[s] that the defendant commit a crime and where the *1101 trier of fact specifically acquitted the defendant of the crime that was the necessary element of the offense for which the defendant was convicted," the general rule permitting inconsistent verdicts is inapplicable. Moore , 49 A.3d at 902.
The Supreme Court reversed this Court and reinstated the PIC conviction. "Although [the defendant's] murder and attempted murder acquittals may be logically inconsistent with [his] PIC conviction," the Court reasoned, "in light of our enduring acceptance of inconsistent verdicts in Pennsylvania, we conclude that the acquittals are not grounds for reversal of [his] PIC conviction." Moore , 103 A.3d at 1250. "[R]eviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense." Id. at 1249. Thus, the defendant's acquittal for allegedly using a firearm to commit murder and attempted murder did not permit the inference that he lacked possession of a firearm.
Magliocco did not control, the Court continued, because it involved an "idiosyncratic" sufficiency challenge that "did not entail jury inferences and so [was] not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal." Moore , 103 A.3d at 1247-48. The Moore court explained that in Magliocco ,
[w]e interpreted the express statutory language of Section 2710(a) and concluded that, because the jury acquitted the defendant, it essentially found that the defendant did not 'commit' terroristic threats, which was a specific element of the crime and the only potentially applicable predicate offense in the defendant's case, and so the evidence was insufficient to sustain the defendant's ethnic intimidation conviction ... It was the fact of the jury's acquittal-not any factual inference drawn from the acquittal-and the statutory elements that drove our discussion. As we later explained in Miller , our holding in Magliocco 'was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute,' and, thus, was not generally applicable to convictions under other statutes.
Id. at 1248 (emphasis added). Then-Justice Saylor concurred, observing that " Magliocco has been effectively limited to its facts." Id. at 1251.
Most recently, in Commonwealth v. Aikens , 641 Pa. 351, 168 A.3d 137 (2017), the Supreme Court returned to 18 Pa.C.S.A. § 6318, the same statute that was at issue in Reed . The Commonwealth charged the defendant with unlawful contact with a minor and IDSI, both graded as first-degree felonies. The trial court instructed the jury that to find the defendant guilty of unlawful contact, it had to find that "the defendant was intentionally in contact with a minor-the victim in this case-second, that contact was for the purpose of engaging in an unlawful act-and in this case, that unlawful act is alleged to be [IDSI]." Id. at 138. The jury convicted the defendant of unlawful contact with a minor but acquitted him of IDSI. The trial court graded the unlawful contact conviction as a first-degree felony and sentenced the defendant to 6-12 years' imprisonment on that count. Citing Reed , the defendant argued that the trial court was required to grade his unlawful contact conviction as a third-degree felony. The Supreme Court upheld the grading of the defendant's sentence as a first-degree felony. The Court distinguished Reed on the basis that "the trial court here specifically instructed the jury that [the defendant's] contact with the victim was alleged to be for the purpose of engaging in IDSI and, thus, this was the only basis upon which [the defendant]
*1102 could have been convicted of unlawful contact with a minor." Id. at 143. Thus,
where the court in Reed had to guess which offense the defendant sought to commit as a result of the multiple acquittals on the Chapter 31 attempt crimes therein and the absence of a jury instruction, there is no doubt here that the jury found that [the defendant] contacted the minor victim for the specific purpose of engaging in IDSI based upon the trial court's instruction and the jury's conviction.
Id. Noting that Reed was guided by Magliocco , the Aikens court distinguished Magliocco in two respects. First, the Court stated that
the jury instruction approach used herein to grade Appellant's conviction for unlawful contact with a minor is precisely in line with the approach members of this Court contemplated in addressing issues arising out of the effect of acquittals on convictions in this and similar contexts ... [See ] Magliocco , 883 A.2d at 492 (noting that the Commonwealth need not charge a defendant with the predicate offense for purposes of the ethnic intimidation statute "as long as [the Commonwealth] makes clear which offense it is pursuing as the predicate offense for purposes of the ethnic intimidation charge, and the factfinder is so made aware and, in the case of a jury, so charged").
Id. at 144. Second, the Court observed that Magliocco involved inconsistent verdicts, but Aikens did not:
[T]he jury's verdicts [in Aikens ] merely indicate that Appellant did not actually commit IDSI with respect to the minor victim, but did unlawfully contact the minor victim for purposes of engaging in IDSI. Cf. Magliocco , 883 A.2d at 492 n.11 (concluding that the verdicts therein were inconsistent given that the ethnic intimidation statute incorporated the predicate offense as an element and explaining that "[a] factfinder cannot logically conclude that a defendant 'committed' the offense of terroristic threats for purposes of that element of ethnic intimidation, but did not 'commit' the offense for purposes of the terroristic threats charge itself"). [Thus,] there is no logical inconsistency in the verdicts rendered in [ Aikens ] ...
Id. at 144-45.
Miller , Moore and Aikens demonstrate that Magliocco does not pertain to the present case, because the operative language in the COM statute is different from the operative language in the ethnic intimidation statute at issue in Magliocco . Ethnic intimidation requires proof of "commission" of a predicate crime; COM does not require proof of the "commission" of a predicate crime , but only proof of a "course of conduct," i.e. , acts that corrupt the morals of a minor. In both Miller and Moore , our Supreme Court expressly distinguished Magliocco due to the lack of a "commission" element in the statute under review. Miller , 35 A.3d at 1212, 1213 (second-degree murder statute does not require Commonwealth to prove defendant "actually committed the predicate offense"); Moore , 103 A.3d at 1248. The outcome here should be the same as in Miller and Moore due to the absence of a commission element in the COM statute-yet the Majority fails to mention Miller and Moore and embraces Magliocco instead.
The Majority compounds its error by failing to follow our own astute analysis of the COM statute in Anderson . There, the Commonwealth charged the defendant with two counts of indecent assault and two counts of COM based on the same conduct underlying the indecent assault charges. The jury acquitted the defendant of indecent assault but convicted him on *1103 both COM counts. The trial court arrested judgment on the COM convictions, and the Commonwealth appealed. We reinstated the COM convictions, stating:
Because we find that the convictions resulted from the introduction of sufficient evidence of specific acts by Anderson, and because these underlying acts , and not indecent assault, formed the basis of the corruption of minors charge, we reverse the trial court's order, reinstate the jury verdict and remand for sentencing.
Id. at 807. (emphasis added). We noted with disapproval that
[i]n its discussion, the trial court refers to "indecent assault" and the underlying alleged "specific acts" interchangeably, implying that they amount to the same thing. The court then proceeds on the assumption that indecent assault is an element of corruption of a minor and so interprets the general jury verdict as presenting a finding that the underlying act was not committed.
Id. at 808. We explained:
It is well settled that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." Commonwealth v. Carter , 444 Pa. 405, 408, 282 A.2d 375, 376 (1971) (citation omitted). When a general verdict is rendered, knowledge of the basis of the decision rests only with the jury itself. Therefore, it is impossible, not to mention improper, to draw specific conclusions from a general verdict. Applied to the present case, this principle yields the conclusion that an acquittal on indecent assault cannot be interpreted to mean as a matter of law that there was insufficient evidence to establish that the underlying acts in fact occurred.
Id. at 809. Further, we noted that:
the information did not allege the crime of indecent assault as the basis of the corruption of minors charge . Rather, the information specifically based the corruption of minors charge upon the acts of cunnilingus. Although the jury returned a verdict of not guilty of indecent assault by committing the acts of cunnilingus, we cannot determine if the jury decided that the acts of cunnilingus did not occur, or if the acts of cunnilingus occurred but the victims consented to them, or if the jury was simply exercising leniency. We cannot determine why the jury returned a verdict of not guilty, and therefore cannot say as a matter of law that the jury believed that the acts of cunnilingus did not occur .
Id. (emphasis added).
The Majority overlooks the highlighted text. The COM statute does not require proof that Appellant committed predicate crimes; it only requires proof of acts that constitute a "course of conduct ," a critical distinction from the ethnic intimidation statute in Magliocco .
In the present case, as in Anderson , the information did not allege commission of the crimes of rape, sexual assault, aggravated indecent assault, or indecent assault as the basis for the COM charge. Rather, the information based the COM charge on a course of conduct culminating in sexual intercourse with the victim, and the Commonwealth presented evidence of this course of conduct during trial. Thus, like the defendant's argument in Anderson , Appellant's challenge to sufficiency of the evidence in this case falls flat.
It also deserves mention that the trial court herein gave the jury the same type of instruction that the Supreme Court endorsed in Aikens . Specifically, the trial court instructed the jury that, to find Appellant guilty of COM, it was required to find that Appellant corrupted or tended to *1104 corrupt the morals of a minor while engaged in a "course of conduct in violation of Chapter 31" relating to the other sexual offenses being rape, sexual assault, and indecent assault. N.T. Trial, 4/12/16-4/13/16, at 147. Because the jury found Appellant guilty of COM, this conviction must stand even if the jury ultimately did not convict Appellant of the underlying Chapter 31 offenses. Even if the COM verdict of guilt was inconsistent with the acquittals on other counts, inconsistent verdicts clearly are lawful. Commonwealth v. Talbert , 129 A.3d 536, 545 (Pa. Super. 2015).
Accordingly, I would affirm the judgment of sentence.
President Judge Gantman and Judge Bowes and Judge Murray join the dissenting opinion.

18 Pa.C.S. § 6301(a)(1)(ii).

18 Pa.C.S. §§ 3121 ; 3124.1; 3125; and 3126, respectively.

18 Pa.C.S. § 6301(a)(1)(i).

At trial, the Commonwealth presented the testimony of the victim, her mother, and Pennsylvania State Police Trooper Joseph Morris. Appellant did not present any testimony or other evidence at trial.

See 42 Pa.C.S. §§ 9799.14(b) ; 9799.15(a)(1).

In light of our disposition, we need not reach the merits of Appellant's second issue.

This disposition also vacates the SORNA registration requirement imposed as a result of the COM-Felony conviction.

18 Pa.C.S.A. §§ 3121, 3124.1, 3125, and 3126, respectively. The Majority refers to these charges collectively as the "Sexual Offenses." I do as well.

18 Pa.C.S.A. § 6301(a)(1)(ii).

The information alleged:
[Appellant], being of the age of 18 years and upwards by any course of conduct related to sexual offenses corrupted or tended to corrupt the morals of a minor less than 18 years of age, or did aid, abet, entice or encourage any such minor in the commission of an offense under Chapter 31, in that [Appellant] did engage in sexual intercourse with a seventeen (17) year old female victim, said incident occurring along an abandoned railroad grade in the Borough of Stoneboro, Mercer County, Pennsylvania.

The Commonwealth did not charge Appellant under any other subsection of the COM statute, so it is unnecessary to discuss other subsections here.

Kelly instructs that "course of conduct" requires "multiple acts over time, in the same manner in which the term is used in the harassment, stalking and [endangering welfare of children] statutes." Id. at 1031. The "course of conduct" element in the harassment and stalking statutes requires "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." Id. at 1030-31.

The defendant was also convicted of possession of an instrument of crime ("PIC"), an offense not relevant to our analysis.

The legislature subsequently changed the default grading for unlawful contact with a minor to a third-degree felony.

The jury found the defendant not guilty of first-degree murder and did not return a verdict on third-degree murder.