IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 54 WAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered May 21, |
| | : | 2019 at No. 1398 WDA 2016, |
| v. | : | affirming in part and vacating in part |
| | : | the Judgment of Sentence of the |
| | : | Court of Common Pleas of Mercer |
| JAMES DUANE BAKER-MYERS, | : | County entered August 19, 2016 at |
| | : | No. CP-43-CR-0001303-2015 and |
| Appellee | : | remanding. |
| | : | |
| | : | ARGUED: September 17, 2020 |

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: JULY 21, 2021**

In 2010, the legislature amended the corruption of minors statute, 18 Pa.C.S. §6301, to include new subsection (a)(1)(ii), which provides for additional penalties when the act or acts that corrupt the morals of a minor are sexual offenses. The subsection provides: "Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree." 18 Pa.C.S. §6301(a)(1)(ii). We granted discretionary review in this case to consider whether the Superior Court properly determined the language "in violation of Chapter 31" is an essential element of an offense under the statute. Upon review, we agree with the Superior Court's assessment. And, because appellee James

Baker-Myers was acquitted of all Chapter 31 sexual offenses charged in the indictment and submitted to the jury, we further agree that, under these circumstances, appellee's conviction for corruption of minors, graded as a third-degree felony, cannot stand. We therefore affirm in all respects.

I.

In the early morning hours of July 19, 2015, appellee, who was then 20 years old, attempted to contact the 17-year-old victim by calling her phone nearly a dozen times. The victim, who had been friends with appellee for several years but had not seen him in weeks, missed his calls because she was sleeping. When she texted him back that afternoon, appellee stated he needed to talk with her in person. The two exchanged several messages before appellee twice called the victim around 9:00 p.m. and stated he was outside her house. The victim greeted him at the end of her driveway before agreeing to take a ride with him on his dirt bike.

Appellee first drove the pair to some baseball fields located a few blocks from the victim's house. Once there, appellee instructed the victim to leave her phone, explaining he wanted their conversation "to be private and no one to listen into it." N.T. Trial, 4/12/2016 at 31. The victim complied and they then continued to drive to another location along some railroad tracks. When they arrived, the victim removed a button-up shirt that was covering a swimsuit top as the shirt had become soaked in mud during the ride. Afterwards, the victim and appellee talked for approximately twenty minutes.

At some point during the conversation, according to the victim, appellee "started to get really touchy." Id. at 39. The victim responded by telling appellee she did not feel that way about him and that she was seeing someone else. Undeterred, appellee began to touch the victim's breasts before undoing part of her bathing suit top from behind. While the victim attempted to retie the part appellee had undone, he undid the other part,

removed the bathing suit top entirely, and tossed it into a nearby bush. The victim reiterated that she did not have feelings for appellee and attempted to retrieve her bathing suit top from the bushes, but appellee picked her up and carried her approximately ten feet further down the tracks, where he laid her on the grass.

The victim alleged that appellee proceeded to get on top of her, using his body weight to pin her arms behind her back. He then removed her belt and started to undo her pants. The victim again stressed she "didn't want to do this[,]" but appellee continued to remove her pants and threw them to the side. *Id.* at 45. Then, while still restraining her arms behind her back, appellee digitally penetrated the victim's vagina. Appellee next began to disrobe. When he stood up to remove his pants, releasing the victim from his grip, the victim attempted to get away from him and collect her clothing because she "didn't want to have sex with him." *Id.* at 47. However, after removing his pants, appellee grabbed the victim and placed her back on the ground, with his own body on top of her. Despite the victim's pleas that she "really didn't want to do this[,]" appellee proceeded to have vaginal intercourse with her. *Id.* at 48. Over the course of approximately ten minutes, the victim tried to push appellee off her while repeatedly telling him to stop, but he persisted, stating that she "probably liked him." *Id.* at 49. After the encounter, both appellee and the victim got dressed and returned to the baseball fields to collect their phones before appellee took the victim home.[1]

The Commonwealth subsequently charged appellee with rape, sexual assault, aggravated indecent assault, and indecent assault (the sexual offenses).[2] He was also

---

[1] Appellee, who did not testify at trial, gave a statement to police in which he eventually "admitted that they did have sex" but denied that it was without the victim's consent. N.T. Trial, 4/12/2016 at 97. He also denied engaging in any of the other sexual conduct alleged by the victim. *See id.*

[2] 18 Pa.C.S. §§3121, 3124.1, 3125, and 3126, respectively.

charged with corruption of minors, graded as a third-degree felony.[3] In describing this charge, the criminal information averred as follows:

**Count 4:  Corruption of Minors**

The District Attorney of Mercer County, Pennsylvania, by this Information presents that on (or about) July 19, 2015

defendant, above named, being of the age of 18 years and upwards by any course of conduct related to sexual offenses corrupted or tended to corrupt the morals of a minor less than 18 years of age, or did aid, abet, entice or encourage any such minor in the commission of an offense under Chapter 31, in that defendant did engage in sexual intercourse with a seventeen (17) year old female victim, said incident occurring along an abandoned railroad grade in the Borough of Stoneboro, Mercer County, Pennsylvania,

in violation of 18 Pa.C.S.A [§]6301(a)(1)(ii)[.]

Criminal Information, 11/2/2015 at 2 (emphasis in original).

The case proceeded to a two-day jury trial.  At the conclusion of the evidence, the trial court charged the jury on the sexual offenses and on corruption of minors.  Following its initial charge on corruption of minors, the court conferred with the parties before giving the following amended instruction:

The attorneys have asked me to clarify a couple of my instructions. . . . I'm going to read specifically the charge for corruption of minors one more time. Whoever being of the age of 18 and upwards **by any course of conduct in violation of Chapter 31, relating to the other sexual offenses being rape, sexual assault, indecent assault,** corrupts or tends to corrupt the morals of any minor of less than 18 years of age or aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31, again the sexual offenses[,] commits a felony of the third degree.

N.T. Trial, 4/13/2016 at 147-48 (emphasis added).[4]  Twice after the jurors retired to deliberate, they returned with questions concerning the corruption of minors charge. *See*

---

[3] 18 Pa.C.S. §6301(a)(1)(ii).

[4] The trial court's original instruction on corruption of minors stated:

To find the defendant guilty of this offense, you must find that each of the following three elements have [sic] been proven beyond a reasonable

N.T. Deliberations, 4/13/2016 at 2, 8. In response, the trial court reiterated, in substantial part, the instruction detailed above. *See id.* at 4, 8-9. The court also opined: "I don't think it's the age that is the sticking point here. I think it is the course of conduct in violation of Chapter 31 relating to sexual offenses." *Id.* at 9.

Ultimately, the jury returned a verdict of guilty of corruption of minors and not guilty of the charged sexual offenses. The trial court later imposed a sentence of one to two years' imprisonment and a consecutive term of three years' probation. Additionally, appellee's conviction for corruption of minors classified him as a Tier I sexual offender, thereby requiring him to comply with the fifteen-year registration and reporting requirements of the Sexual Offender Registration and Notification Act.[5] Appellee did not file post-sentence motions, but he did file a timely appeal.

---

doubt. First that the defendant was 18 years of age or older at the time of the incident giving rise to the charge. Second, that the minor in this case . . . was under 18 years of age at that time; and third, that the defendant corrupted or intended to corrupt the morals of the minor by the following alleged conduct: that he did aid, abet, entice or encourage her . . . to engage in sexual intercourse[.]"

N.T. Trial, 4/13/2016 at 138-39. Defense counsel complained that this instruction was deficient since "only the first part [of subsection (a)(1)(ii)] applies[.]" *Id.* at 145. Counsel also argued the jury should be instructed that, with respect to corruption of minors, "they must [ ] find beyond a reasonable doubt [that appellee] committed one of the offenses for which he's charged." *Id.* at 146. For his part, the prosecutor suggested the court should "make it clear to the jury that . . . sexual assault, rape[,] indecent assault, and aggravated indecent assault are all under [C]hapter 31 of the crimes code." *Id.* at 145.

We observe that subsection (a)(1)(ii) "identifies two distinct offenses. The part at issue addresses the application of the corruption of minors statute to sexual offenses committed by the adult defendant. The second part . . . addresses the application of the . . . statute where the defendant 'aids, abets, entices or encourages' a minor to commit a sexual offense." *Commonwealth v. Kelly*, 102 A.3d 1025, 1030 (Pa. Super. 2014) (*en banc*), *quoting* 18 Pa.C.S. §6301(a)(1)(ii). Aside from the trial court's initial charge, there has otherwise been no suggestion throughout this case that the second part of subsection (a)(1)(ii) applies to the present facts. We thus do not discuss it further.

[5] *See* 42 Pa.C.S. §§9799.14(b), 9799.15(a)(1).

On May 21, 2019, a sharply divided panel of the Superior Court sitting *en banc* affirmed in part and vacated in part appellee's judgment of sentence, and remanded the case for resentencing. *Commonwealth v. Baker-Myers*, 210 A.3d 1093, 1096 (Pa. Super. 2019) (*en banc*).[6] The majority opinion, authored by Judge Alice Beck Dubow and joined by four other jurists, concluded it was "constrained to agree" with appellee "that the Commonwealth failed to prove an essential element of" corruption of minors under subsection (a)(1)(ii). *Id.* at 1094. The majority explained:

> [I]n the instant case, the Commonwealth charged and prosecuted [appellee] for [corruption of minors graded as a third-degree felony] and the Sexual Offenses, but failed to obtain a conviction on any of the Sexual Offenses. By acquitting [appellee] of the Chapter 31 Sexual Offenses, the jury found that the Commonwealth had failed to establish beyond a reasonable doubt that [appellee] acted 'in violation of Chapter 31.' Thus, because the jury found that [appellee] had not acted 'in violation of Chapter 31,' an essential element of [corruption of minors graded as a third-degree felony], the Commonwealth was unable to establish every element of [the crime].

*Id.* at 1096. In reaching its conclusion, the majority acknowledged it had uncovered no authority directly on point. *See id.* Still, it resolved that our decision in *Commonwealth v. Magliocco*, 883 A.2d 479 (Pa. 2005), guided its analysis. Although we discuss the circumstances of *Magliocco* in much greater detail below, for present purposes it is enough to note we held that where a jury "specifically found that Magliocco did not commit the offense of terroristic threats, [his] conviction for ethnic intimidation, which requires as an element the commission beyond a reasonable doubt of the underlying offense," was infirm. *Id.* at 493. Having concluded appellee's conviction for corruption of minors graded

---

[6] Previously, on December 29, 2017, a divided three-judge panel of the Superior Court reached the same result; however, *en banc* reargument was granted at the Commonwealth's request.

as a third-degree felony was similarly defective, the majority here vacated and remanded for resentencing.[7]

Judge Victor P. Stabile authored a dissenting opinion joined by three other jurists. In the dissent's view, the majority erred by "narrowly focusing on *Magliocco*, disregarding post-*Magliocco* decisions that quarantine its reach, and overlooking [that court's] own cogent analysis of the [corruption of minors] statute in [*Commonwealth v. Anderson*, 550 A.2d 807 (Pa. Super. 1988) (*en banc*)]." *Baker-Myers*, 210 A.3d at 1098. Along those lines, the dissent first argued that *Magliocco* is not controlling, because the ethnic intimidation statute at issue in that case had materially different language than the corruption of minors statute's "course of conduct" element. *See id.* at 1102 ("Ethnic intimidation requires proof of 'commission' of a predicate crime; [corruption of minors] does not require proof of the 'commission' of a **predicate crime**, but only proof of a 'course of conduct,' *i.e.*, **acts** that corrupt the morals of a minor.") (emphasis in original). The dissent next examined in detail a series of decisions rendered after we decided *Magliocco* — all of which we discuss further *infra* — that the dissent believed restricted *Magliocco*'s applicability. *See id.* at 1099-1102 (discussing *Commonwealth v. Reed*, 9 A.3d 1138 (Pa. 2010), *Commonwealth v. Miller*, 35 A.3d 1206 (Pa. 2012), *Commonwealth v. Moore*, 103 A.3d 1240 (Pa. 2014), and *Commonwealth v. Aikens*, 168 A.3d 137 (Pa. 2017)). The dissent took the position that those decisions "demonstrate that *Magliocco* does not pertain to the present case," and it faulted the majority for failing even to discuss

---

[7] Citing *Kelly, supra*, the *en banc* majority proceeded to explain that a misdemeanor charge of corruption of minors under subsection (a)(1)(i) is a lesser-included offense of corruption of minors graded as a third-degree felony under subsection (a)(1)(ii). Thus, although the majority vacated appellee's conviction for felony corruption of minors, it noted a "[m]isdemeanor conviction remains valid as a lesser-included offense." *Baker-Myers*, 210 A.3d at 1096, *citing Kelly*, 102 A.3d at 1032-33; *see also Commonwealth v. Sims*, 919 A.2d 931, 938 (Pa. 2007) (it is settled law "that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged"). There is no issue in this appeal challenging this aspect of the Superior Court's holding.

them. *Id.* at 1102. Finally, the dissent similarly criticized the majority for ignoring the Superior Court's decision in *Anderson*. The dissent noted, "[i]n the present case, as in *Anderson*, the information did not allege commission of the [sexual offenses] as the basis for the [felony corruption of minors] charge . . . [but rather] on a **course of conduct** culminating in sexual intercourse with the victim, and the Commonwealth presented evidence of this course of conduct during trial." *Id.* at 1103 (emphasis in original).[8] Accordingly, the dissent would have held appellee's sufficiency challenge failed.

The Commonwealth sought allowance of appeal, which we granted to address the following two questions:

> (1) Whether the Superior Court [ ], citing the case of [*Magliocco*], properly held the language 'in violation of Chapter 31' is an essential element necessary for a conviction of Corruption of Minors as a felony of the third degree[?]
>
> (2) Whether the evidence was sufficient for a conviction of Corruption of Minors as a felony of the third degree despite the jury's acquittal of Rape, Sexual Assault, Aggravated Indecent Assault and Indecent Assault[?]

*Commonwealth v. Baker-Myers*, 221 A.3d 182 (Pa. 2019) (*per curiam*). As these present questions of law, our standard of review is *de novo* and our scope of review is plenary. *In re J.B.*, 189 A.3d 390, 414 n.24 (Pa. 2018).

II.

The principal area of disagreement in this case, as highlighted by the parties' arguments and the competing opinions below, concerns the applicability of our decision in *Magliocco* to subsection (a)(1)(ii) of the corruption of minors statute. For that reason, we begin with a closer examination of *Magliocco* and its treatment in later decisions.

A.

---

[8] *Anderson* was decided by the Superior Court more than two decades before the legislature added subsection (a)(1)(ii) to the corruption of minors statute. As such, it does not speak to the issue implicated here, and we do not consider it further.

*Magliocco* concerned a sufficiency-of-the-evidence challenge in the "admittedly unusual circumstance" where the defendant was convicted of ethnic intimidation but acquitted of terroristic threats, the predicate offense. *Magliocco*, 883 A.2d at 492.[9] At the time the defendant was charged, the ethnic intimidation statute provided, in pertinent part, that a person is guilty of ethnic intimidation

> if, with malicious intention toward the race . . . of another individual or group of individuals, he **commits an offense under any other provision of this article** or under Chapter 33 . . . or under section 3503 . . . or under section 5504 . . . with respect to such individual . . . or with respect to one or more members of such group[.]

18 Pa.C.S. §2710(a) (emphasis added). Recognizing the ethnic intimidation statute incorporates as an element a predicate offense — the applicable predicate offense in *Magliocco* being terroristic threats — we pointedly remarked "the verdicts in this case are inconsistent." *Magliocco*, 883 A.2d at 492 n.11. But, we also explained "a mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." *Id.* at 492, *citing Commonwealth v. Carter*, 282 A.2d 375, 376 (Pa. 1971) ("An acquittal cannot be interpreted as a specific finding in relation to some of the evidence.") (internal quotation and citation omitted). Our analysis thus shifted to a more straightforward consideration of whether the Commonwealth had proven all necessary elements of ethnic intimidation beyond a reasonable doubt where the crime of terroristic threats, on which the jury acquitted the defendant, was "separately charged and prosecuted and is also a specific statutory element of another charged offense." *Id.*

We held the Commonwealth failed to meet its burden under those circumstances. Although we emphasized the Commonwealth was not required to charge or secure a conviction for the predicate crime in order to secure a conviction for ethnic intimidation,

---

[9] *See* 18 Pa.C.S. §§2701 and 2706, respectively.

we declined to ignore the special weight acquittals have been accorded in the law. *See id.* (citations omitted). As a result, we concluded that in order to sustain the defendant's ethnic intimidation conviction "the factfinder had to conclude beyond a reasonable doubt that, among other things, he actually 'committed' the offense of terroristic threats" — a burden the Commonwealth did not satisfy given that the jury, by means of its acquittal, "specifically found [the defendant] did not commit the offense of terroristic threats[.]" *Id.* at 492-93. We nevertheless emphasized that the Commonwealth need not formally charge a predicate offense in such situations "as long as it makes clear which offense it is pursuing as the predicate offense for purpose of the ethnic intimidation charge, and the factfinder is so made aware and, in the case of a jury, so charged." *Id.* at 492.

This concept came into sharper focus a few years later in *Reed.* There, we found *Magliocco* provided "limited guidance" in our interpretation of a statute prohibiting unlawful contact with a minor. *Reed,* 9 A.3d at 1147. *See* 18 Pa.C.S. §6318(1) ("A person commits an offense if he is intentionally in contact with a minor . . . for the purpose of engaging in . . . [a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses)."). In that case, a jury convicted the defendant of unlawful contact with a minor but acquitted him of a number of underlying charged sexual offenses. We granted review to consider what effect the defendant's acquittals had on the grading of his unlawful contact conviction, since the grading depended on the nature of the underlying offense, *i.e.,* "the purpose" for which the defendant contacted the minor. *Id.; see id.* §6318(b). In this respect, we discerned a salient difference between the circumstances in *Magliocco* and those in *Reed,* in that the former involved predicate offenses and the latter did not. At the same time, we recognized the cases shared "one common feature: . . . the Commonwealth was not required to charge the defendant with the" predicate offenses in order to secure a conviction for the offenses under review, *i.e.,* ethnic intimidation in

*Magliocco* and unlawful contact in *Reed*. *Reed*, 9 A.3d at 1147. But since the Commonwealth **did** charge the underlying offenses in *Reed*, and the jury **acquitted** the defendant of those crimes, we held the acquittals "cannot be ignored when applying the appropriate grading[.]" *Id.*; *see id.* (we "cannot countenance" situation where "the sentencing court had to guess which offense [the defendant] sought to commit when he contacted [the minor]").

We revisited the issue of inconsistent verdicts in *Miller* — this time where the defendant was convicted of second-degree murder but acquitted of the predicate felony of robbery. Initially, we restated that the decision in *Magliocco* "reflects our conclusion that the Commonwealth fails to prove an element of the offense of ethnic intimidation if the factfinder acquits the accused of the predicate offense." *Miller*, 35 A.3d at 1212; *see id.* ("From a plain reading of the statutory text, there is no question that the **commission of the predicate offense is an element** of ethnic intimidation.") (emphasis in original). However, we reasoned this principle had little to do with the language of the second-degree murder statute, which "does not set forth or require the commission of the predicate offense as an element." *Id.*; *see id.* (the phrase "[p]erpetration of a felony" as used in the second-degree murder statute, 18 Pa.C.S. §2502(b), "is statutorily defined in a very broad manner" and does not require the Commonwealth to prove the accused actually committed the predicate offense). Accordingly, we held that *Magliocco*, which was grounded in the delineation of the elements of ethnic intimidation as established in the text of that statute, did not control the outcome in *Miller*, "where a very different statute is at issue." *Id.* at 1213; *see id.* at 1212 ("In contrast to the ethnic intimidation statute, the second-degree murder statute does not set forth or require the **commission of the predicate offense** as an element.") (emphasis added).

We reached a similar conclusion in *Moore*, a case in which a jury acquitted the defendant of murder and attempted murder but convicted him of possession of an instrument of crime (PIC) for his role in a gunfight. We began our decision in *Moore* by remarking that, although the defendant had framed his issue as a sufficiency challenge, "such challenges are more appropriately characterized as challenges to the inconsistency of the jury's verdict, rather than to the sufficiency of the evidence to sustain a particular conviction." *Moore*, 103 A.3d at 1242 n.3. *Accord United States v. Powell*, 469 U.S. 57, 67 (1984) (cautioning that sufficiency review "should not be confused with the problems caused by inconsistent verdicts" because the former entails an assessment of whether the evidence was sufficient to convict on a particular offense and is "independent of the jury's determination that evidence on another count was insufficient"). Beyond this point, we proceeded to express our continued recognition that jury acquittals should not be interpreted as specific factual findings arising from the evidence; rather, an acquittal "may merely show lenity on the jury's behalf, or that 'the verdict may have been the result of compromise, or of a mistake on the part of the jury.'" *Moore*, 103 A.3d at 1246, *quoting United States v. Dunn*, 284 U.S. 390, 394 (1932). Taking these principles into account, we clarified that the decisions in *Magliocco* and *Reed*, properly understood, "involve largely idiosyncratic sufficiency or grading challenges that, critically, do not entail jury inferences and so are not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal." *Id.* at 1247-48. Instead, we reasoned, "[i]t was the fact of the jury's acquittal — not any factual inference drawn from the acquittal — and the statutory elements that drove our discussion" in those cases. *Id.* at 1248. And, consistent with this understanding, we held in *Moore* that although the defendant's "murder and attempted murder acquittals may be logically inconsistent with [his] PIC conviction, in light of our enduring acceptance of

inconsistent verdicts in Pennsylvania, . . . the acquittals are not grounds for reversal of [the defendant's] PIC conviction[.]" *Id.* at 1250.[10]

Finally and most recently, in *Aikens* we again addressed the unlawful contact with a minor statute that was at issue in *Reed*. Similar to *Reed*, a jury in *Aikens* convicted the defendant of unlawful contact but acquitted him of the underlying substantive offense for which he contacted the minor — in that case, involuntary deviate sexual intercourse (IDSI). Unlike in *Reed*, however, we deemed it significant that the trial court in *Aikens* "specifically instructed the jury that [the defendant's] contact with the victim was alleged to be for the purpose of engaging in IDSI and, thus, this was the only basis upon which [the defendant] could have been convicted of unlawful contact with a minor." *Aikens*, 168 A.3d at 143; *see id.* ("in convicting [the defendant] of the offense of unlawful contact with a minor the jury necessarily found as fact that [he] contacted the minor victim in this case for the specific purpose of engaging in IDSI").[11] Stated otherwise, we found *Aikens* distinguishable from *Reed* because although the jury acquitted the defendant of the Chapter 31 offenses underlying his conviction for unlawful contact with a minor, "any guesswork this Court was concerned about in *Reed* regarding the purpose for which the

---

[10] Justice Saylor authored a concurring opinion in *Moore* in which he opined, "it should be reasonably clear that *Magliocco* has been effectively limited to its facts." *Moore*, 103 A.3d at 1250-51 (Saylor, J., concurring). Then-Justice (now Chief Justice) Baer, in a separate concurring opinion, likewise noted "*Magliocco* is distinguishable from the case at bar, which does not involve a compound offense." *Id.* at 1251 n.1 (Baer, J., concurring).

[11] More precisely, the trial court in *Aikens* instructed the jury as follows:

> The [defendant] has been charged with unlawful contact with a minor. To find [the defendant] guilty of this offense, you must find that each of the following elements has been proven beyond a reasonable doubt: First, that [the defendant] was intentionally in contact with a minor — the victim in this case — **second, that contact was for the purpose of engaging in an unlawful act — and in this case, that unlawful act is alleged to be [IDSI]**, the crime that we just discussed[.]

*Aikens*, 168 A.3d at 138 (internal quotations and citation omitted; emphasis added).

defendant made the unlawful contact was eliminated by the trial court's instruction and jury verdict on that charge." *Id.* at 143-44.

B.

Having reviewed the pertinent case law, we now return to the arguments of the parties in the present appeal. The Commonwealth, drawing heavily from Judge Stabile's dissent below, maintains the *en banc* Superior Court majority erred in relying on *Magliocco* because (1) *Magliocco*'s statutory analysis is distinguishable, and (2) post-*Magliocco* case law limits *Magliocco*'s scope. *See* Commonwealth's Brief at 11. With respect to the first point, the Commonwealth argues that whereas the ethnic intimidation statute expressly requires commission of a predicate offense, subsection (a)(1)(ii) of the corruption of minors statute "only requires the Commonwealth establish 'any course of conduct in violation of Chapter 31.'" *Id.* at 18, *quoting* 18 Pa.C.S. §6301(a)(1)(ii). In this vein, the Commonwealth emphasizes it did not charge the specific sexual offenses as the underlying basis for the offense of corruption of minors, "but merely charged a course of conduct ending in sexual intercourse with the minor victim." *Id.* It further claims the trial court's jury instruction did not require the jury to find appellee actually committed the sexual offenses; rather, it only required the jury to find appellee "corrupted the morals of a minor **by any course of conduct in violation of Chapter 31, relating to the other sexual offenses**." *Id.* at 22 (emphasis in original); *see id.* ("the jury was still free to fully consider the evidence and render a verdict of guilty based upon specific **acts**, not **offenses**, in violation of Chapter 31") (emphasis in original). Relative to its second point, the Commonwealth asserts that, "[f]ollowing *Magliocco* and *Reed*, this Court has continually rejected opportunities to apply *Magliocco* to criminal statutes other than [e]thnic [i]ntimidation." *Id.* at 14; *see id.* at 14-18 (discussing *Miller*, *Moore*, and *Aikens*).

Appellee disagrees on both fronts. He first argues "the principles, authority and logic of *Magliocco* command the same result in the present case." Appellee's Brief at 10. As appellee sees it, there is no meaningful distinction between the language in the ethnic intimidation statute — which requires proof the defendant **commits an offense** under one of the delineated statutes — and corruption of minors under subsection (a)(1)(ii) — which requires proof the defendant commits acts **in violation of Chapter 31.** *See id.* at 13 ("Simply stated, whether a defendant is acquitted of **committing an offense under** or acts **in violation of a** particular statute is a distinction without substance . . . . In both cases, once the overarching offense incorporates a predicate offense as a material element, acquittal on the predicate offense renders a conviction on the overarching offense a logical and practical impossibility.") (emphasis in original).[12] Regarding this Court's post-*Magliocco* case law, appellee detects no inconsistency in our decisions, explaining we "correctly declined to apply *Magliocco* since these cases did not involve patently inconsistent verdicts for predicate and overarching offenses." *Id.* at 18. More importantly, appellee submits that here, as in *Magliocco*, "[s]ince there was an acquittal on the predicate offense(s), there could be no basis for the conviction to the overarching offense, since the factfinder concluded the predicate offense, as an element of the overarching offense, was not proven beyond a reasonable doubt." *Id.* at 10.[13]

---

[12] The Defender Association of Philadelphia filed an *amicus curiae* brief in support of appellee wherein it reinforces these arguments. *See, e.g., Amicus Curiae* Brief at 7 ("Committing a predicate offense is no different than engaging in conduct in violation of the law defining the predicate offense. Both statutes require the same thing — substantive culpability for the underlying predicate offense[.]"); *id.* at 10 ("[T]he post-*Magliocco* cases cited by the Commonwealth show nothing other than that statutes that do **not** require substantive culpability for the predicate offense are not controlled by *Magliocco*.") (emphasis in original).

[13] Appellee raises an additional argument in his brief, contending his sentence "should also be vacated since the evidence was insufficient to establish that [he] committed acts constituting a 'course of conduct.'" Appellee's Brief at 22; *see id.* at 22-24 (discussing the

III.

As an initial matter, we candidly acknowledge our prior jurisprudence in this arena is helpful only up to a certain point. The parties recognize — and rightfully so — that the language of subsection (a)(1)(ii) of the corruption of minors statute is facially different than the language at issue in *Magliocco* and those decisions following in its wake. This patent textual difference requires that we engage in statutory construction of subsection (a)(1)(ii), a relatively new provision we have never before examined. We do so mindful that the object of all statutory interpretation and construction "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). Where the language of a statute is unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). The Statutory Construction Act further directs that we must interpret words in a statute "according to their common and approved usage; but technical words and phrases . . . shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. §1903. It is only when the language in a statute is ambiguous that we resort to other canons of statutory construction. *See* 1 Pa.C.S. §1921(c).

We begin by restating once more the pertinent statutory language: "Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years old of age . . . commits a felony of the third degree." 18 Pa.C.S. §6301(a)(1)(ii). At bottom, the parties disagree over the meaning of the discrete phrase "by any course of conduct in violation of Chapter 31." The Commonwealth more narrowly

---

Superior Court's decision in *Kelly*, 102 A.3d at 1031-32, wherein that court held "the use of the phrase 'course of conduct' in the first provision of subsection (a)(1)(ii) imposes a requirement of multiple acts over time"). Given our disposition, we do not address this secondary argument or the propriety of the decision in *Kelly*.

focuses on the first part of the phrase, i.e., "any course of conduct," to argue the statute requires only a finding of specific acts, not offenses. In other words, the Commonwealth does not view the statute's phrasing as creating "predicate and overarching offenses," or a "compound offense," as our precedents have variably described them. Appellee takes a different approach and reaches the opposite conclusion. Highlighting the second part of the phrase, i.e., "in violation of Chapter 31," appellee maintains this language clearly incorporates a predicate offense as a material element of the overarching offense — just as we determined with respect to the ethnic intimidation statute at issue in Magliocco. Moreover, appellee does not dispute the Commonwealth's portrayal of the statute as requiring a finding of specific acts, but he argues that only those acts that are "in violation of Chapter 31" satisfy the commands of the statute. We conclude appellee has the better of the two arguments.

Most significantly, we find the Commonwealth, like the dissent below and here, sets its sights on the wrong statutory target. The dispositive language in the statute is not, as the Commonwealth posits, the phrase "any course of conduct"; instead, this case is properly resolved by interpreting the language that directly follows, i.e., the phrase "in violation of Chapter 31." The key word in this phrase is "violation," an undefined term. We have previously recognized that "[o]ne way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition." In re Beyer, 115 A.3d 835, 839 (Pa. 2015). According to Black's Law Dictionary, the noun "violation" typically refers to "[a]n infraction or breach of the law; a transgression." Violation, BLACK'S LAW DICTIONARY (11th ed. 2019). Applying this definition here, it becomes clear that the phrase "in violation of" is not all that different from the phrase "commits an offense" as interpreted in Magliocco; both are aimed at some act that amounts to illegal conduct under the law. Thus, the most natural understanding of the phrase "in violation of Chapter 31," as used

in subsection (a)(1)(ii) of the corruption of minors statute, is that it operates to create — as an element of the offense — a requirement that the Commonwealth prove beyond a reasonable doubt that the accused engaged in a course of conduct involving a breach of some law or laws contained in Chapter 31 of the Crimes Code.

However, this is not to say the Commonwealth must formally charge or obtain a conviction on the Chapter 31 offense or offenses serving as the predicate for the felony corruption of minors charge in order to sustain a conviction for corruption of minors. It is on this limited point that our precedents provide more useful guidance. As we have repeatedly held in cases like *Magliocco* and *Reed*, where an indictment alleges and the jury is specifically charged on the underlying predicate offense, an acquittal of that underlying predicate offense renders the evidence insufficient as a matter of law with respect to the primary offense. But there is no similar evidentiary sufficiency problem when the Commonwealth elects to forego charging one or more predicate offenses, "as long as it makes clear which offense it is pursuing as the predicate offense for purposes of the [felony corruption of minors] charge, and the factfinder is so made aware and, in the case of a jury, so charged." *Magliocco*, 883 A.2d at 492.[14]

Nevertheless, we reject the Commonwealth's argument that it did not run afoul of these principles in this particular case. First, with respect to the criminal information, while it is true the only "predicate" conduct alleged was that appellee "did engage in sexual intercourse with" the victim, Criminal Information, 11/2/2015 at 2, we also observe the offense description curiously omitted the phrase "in violation of Chapter 31" and replaced it with a less stringent showing of "conduct **related to** sexual offenses." *Id.* (emphasis

---

[14] Appellee conceded this very point at oral argument before this Court. *See* Oral Argument, Morning Session, 9/17/2020, at 1:50:20-1:51:00 (available at https://www.youtube.com/watch?v=FvJqcyHceXs&t=6652s). *Amicus* likewise agrees. *See Amicus Curiae* Brief at 2 ("[T]his crime requires substantive culpability for a 'predicate offense' (not a conviction for this 'predicate offense,' but substantive culpability for it).").

added). Even more importantly, contrary to the Commonwealth's suggestion — based on a selective quotation from the transcript — that the trial court did not instruct the jury it was required to find appellee actually committed one or more of the charged sexual offenses, *see* Commonwealth's Brief at 22, a review of the court's full instruction proves otherwise. Notably, the trial court instructed the jury that it was required to find "any course of conduct in violation of Chapter 31, relating to **the other sexual offenses being rape, sexual assault, indecent assault**[.]" N.T. Trial, 4/13/2016 at 147 (emphasis added). In light of this clear instruction regarding the applicable predicate offenses, which was given in part at the prosecutor's request, *see supra* n.4, we are unpersuaded by the Commonwealth's attempt to salvage appellee's felony corruption of minors conviction by analogizing the circumstances of his case to those in *Aikens*. *See* Commonwealth's Brief at 18, 22 (arguing this case is "similar to *Aikens*" because the Commonwealth did not charge the Chapter 31 offenses as the underlying basis for the corruption of minors offense and the trial court did not so instruct the jury). The decision in *Aikens* does not support the Commonwealth's position under the facts presented.

## IV.

In sum, we conclude the Superior Court properly determined the language "in violation of Chapter 31" is an essential element of a felony corruption of minors offense under 18 Pa.C.S. §6301(a)(1)(ii). Although the Commonwealth is not required to formally charge or secure a conviction for a predicate Chapter 31 offense, where, as here, the jury is specifically instructed on the predicate offense or offenses pertaining to the corruption of minors charge, and the jury then renders an acquittal on all such predicates, a conviction for felony corruption of minors cannot stand. In reaching this conclusion, we do not disturb the longstanding principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal. Instead, we simply

recognize the statute's unusual phrasing has left it vulnerable to "idiosyncratic sufficiency . . . challenges" like the one launched in *Magliocco*. *Moore*, 103 A.3d at 1247-48. And, as demonstrated, it is "the fact of the jury's acquittal — not any factual inference drawn from the acquittal — and the statutory elements" of the offense that drive this conclusion. *Id.* at 1248.

The order of the Superior Court is affirmed.

Chief Justice Baer and Justices Saylor, Todd, Donohue, and Wecht join this opinion.

Justice Mundy files a dissenting opinion.